UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SEPEHR SABETI**, *et al.*,<br><br>  Plaintiffs,<br><br>v.<br><br>**ANTONY J. BLINKEN**, *et al.*,<br><br>  Defendants. | Civil Action No. 24-cv-2627 (TSC) |

## MEMORANDUM OPINION

Plaintiffs Sepehr Sabeti, a U.S. citizen, and his fiancée Sayna Azargoshasbi, an Iranian national, seek to compel agency action on Azargoshasbi's application for a fiancée visa. Plaintiffs allege that Defendants Antony J. Blinken, in his then-official capacity as Secretary of State, and Robert Jachim, in his official capacity as Acting Director of the Office of Screening, Analysis and Coordination at the Department of State, have unreasonably delayed final adjudication of Azargoshasbi's visa application and seek relief under the Administrative Procedure Act ("APA") and the Mandamus Act. Compl., ECF No. 1. Defendants now move to dismiss. Mot. to Dismiss, ECF No. 6. For the reasons set forth below, the court will GRANT Defendants' Motion.

### I.   BACKGROUND

Under the Immigration and Nationality Act, a U.S. citizen or legal permanent resident may apply for a visa for their fiancée to enter the United States so the couple can marry within ninety days. 8 U.S.C. § 1101(a)(15)(K)(i). The U.S. citizen or resident must first file a petition with U.S. Citizenship and Immigration Services ("USCIS"). *See* 8 U.S.C. § 1184(d)(1); 8 C.F.R. § 214.2(k)(1). If USCIS approves the petition, it is forwarded, via the National Visa Center, to the appropriate U.S. Embassy or Consulate. U.S. Dep't of State, *Nonimmigrant Visa for a Fiancée*

*(K-1)*, https://perma.cc/L5Q2-645A. The foreign-citizen fiancée may then submit a visa application. *Id.* Once "the necessary documents have been collected," a consular officer interviews the fiancée. 9 F.A.M. § 502.7-3(C)(4).[1] "[B]y bringing the required paperwork to [the] in-person interview," the fiancée "execute[s]" her application. *Karimova v. Abate*, No. 23-5178, 2024 WL 3517852, at *1 (D.C. Cir. July 24, 2024) (quoting 9 F.A.M. § 504.1-3(a), (g)).

Once the application is executed, "the consular officer must issue" or "refuse the visa." 22 C.F.R. § 41.121(a); *see also* 9 F.A.M. § 504.1-3(g).[2] If the applicant fails to establish her visa eligibility, the consular officer "shall" refuse her a visa. *See* 8 U.S.C. § 1201(g); *see also id.* § 1361 (placing burden on applicant to establish eligibility). "After . . . refusing to issue a visa," "the [officer] may then conclude that the applicant could perhaps still receive a visa" if additional information were discovered. *Karimova*, 2024 WL 3517852, at *2. If so, the consular officer may place the refused visa application into administrative processing—a status that enables the consular officer to "re-open and re-adjudicate" the previously refused application if additional information comes to light. *Id.* (citing 9 FAM §§ 306.2-2(A)(a), (A)(a)(2)). But "[u]nless and until that happens," "the visa application remains officially refused." *Id.*

In August 2022, Sabeti filed a petition with USCIS on behalf of Azargoshasbi. Compl. ¶ 2. USCIS approved the petition in August 2023, and Azaragoshasbi submitted her visa application soon thereafter. *Id.* ¶¶ 3–4. Following her interview at a U.S. Embassy in December 2023, a

---

[1] Although Plaintiffs seek a nonimmigrant visa which is generally governed by 9 F.A.M. § 401.1 *et seq.*, the Foreign Affairs Manual provides that fiancée visas "are processed similarly to immigrant visas," 9 F.A.M. § 402.7. Accordingly, the court cites to 9 F.A.M. § 501.1 *et seq.* as authority for issues related to the processing of fiancée visas.

[2] If the applicant's home country is under a visa sanction, the consular officer must instead "discontinue granting the visa." 22 C.F.R. § 41.121(a). This provision is inapplicable here.

consular officer refused her application and placed it into administrative processing. *See id.* ¶¶ 5, 67–68; *see also* Compl. – Ex. E, ECF No. 1-1.

Defendants now move to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Mot. to Dismiss at 1.

## II.   LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation modified). Although the court "must accept as true all allegations contained in [the] complaint," *id.*, it need not "accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

## III.   ANALYSIS

Plaintiffs bring claims of unreasonable delay under both the APA and the Mandamus Act. To prevail under either statute, they must make the same "threshold" showing that the State Department has "failed to take a discrete agency action that it is required to take." *Karimova v. Abate*, No. 23-5178, 2024 WL 3517852, at *1 (D.C. Cir. July 24, 2024) (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004)).[3] Because Plaintiffs fail to point to any duty requiring the State Department to take further action on Azaragoshasbi's already-refused visa application, they have failed to state a claim under both the APA and the Mandamus Act.[4]

---

[3] *See also In re Ctr. for Biological Diversity*, 53 F.4th 665, 670 (D.C. Cir. 2022) (To obtain the "extraordinary remedy" of mandamus, Plaintiffs "must first establish that the agency has violated a crystal-clear legal duty." (citation modified)); *Montanans for Multiple Use v. Barbouletos*, 568 F.3d 225, 227 (D.C. Cir. 2009) (To prevail on a claim of agency inaction under the APA, Plaintiffs must "identify a legally required, discrete act that [the agency] has failed to perform.").

[4] Because the court dismisses Plaintiffs' claims on this ground, it need not address Defendants' alternative argument that the doctrine of consular nonreviewability bars Plaintiffs' claims. *See Almaqrami v. Pompeo*, 933 F.3d 774, 784 n.3 (D.C. Cir. 2019) ("Courts may assume without

Although Plaintiffs are correct that a consular officer must "issue" or "refuse" a visa application once it is executed, Opp'n at 17, ECF No. 7 (quoting 22 C.F.R. § 41.121(a)), Azaragoshasbi has "already received" the "official refusal" she is entitled to, *Karimova*, 2024 WL 3517852, at *4. As Plaintiffs acknowledge, a consular officer "refused" Azaragoshasbi's application following her interview in December 2023. Compl. ¶ 67; *see also* Compl. Ex. E ("A U.S. Consular officer has adjudicated and refused your visa application."). That satisfies the State Department's obligation under 22 C.F.R. § 41.121(a). *See Karimova*, 2024 WL 3517852, at *5.[5] Because Plaintiffs identify no requirement that the State Department has to act further, they cannot state a claim under either the APA or the Mandamus Act. *See Sedaghatdoust v. Blinken*, 735 F. Supp. 3d 1, 7 (D.D.C. 2024) ("[T]he *only* duty that the statute or regulations impose on consular officers is a duty to grant or refuse a visa. And that duty has been performed; [plaintiff's] application has been refused. The statute does *not* create an additional duty to engage in post-refusal reconsideration . . . .").

Plaintiffs attempt to resist this straightforward conclusion. They contend that because Azaragoshasbi's application was placed into administrative processing, the State Department has not issued "a final refusal" and has therefore failed to fulfill its duty to act. Opp'n at 9–12. But the D.C. Circuit squarely rejected that argument in *Karimova v. Abate*. There, the Court explained that even if a consular officer places an executed application into administrative processing after

---

deciding that a plaintiff's statutory claims are reviewable and proceed to the merits notwithstanding consular nonreviewability." (citation modified)).

[5] The State Department likewise fulfilled any duty to "properly and promptly" process a visa application, *see* 22 C.F.R. § 41.106, by refusing Azaragoshasbi a visa following her interview, *Hemmat v. Blinken*, 2024 WL 4210658, at *4 (D.D.C. Sep. 17, 2024). "Similarly, to the extent that the State Department's collection of fees under 22 C.F.R. § 41.107 creates a duty to complete the corresponding service, the consular officer did so by issuing the refusal decision." *Id.*

refusing it, the officer has still issued a "formal" and "official refusal" that discharges any duty to act under the regulations and section 555(b) of the APA. *Karimova*, 2024 WL 3517852, at *2, 4. Plaintiffs' argument that Azaragoshasbi received a "quasi-refusal" is unavailing. Quasi-refusals refer to situations where an applicant "inquires about visa eligibility" without filing "a formal application" and is "informed of [her] apparent ineligibility." 9 F.A.M. § 504.11-3(B)(1). By contrast, where, as here, "a formal application has been made," "[t]here is no such thing as an informal refusal"—the refusal is a "formal" one. *Karimova*, 2024 WL 3517852, at *2 (quoting 9 F.A.M. § 504.11-2(A)(b)).

Plaintiffs make no effort to distinguish *Karimova*. Instead, they attack that unpublished decision as "unpersuasive, nonprecedential, and nonbinding." Opp'n at 15. But although unpublished decisions of the D.C. Circuit may not be binding on future panels of the Court of Appeals, those decisions are still "precedential" if entered on or after January 1, 2002. *Davis v. U.S. Sent'g Comm'n*, 716 F.3d 660, 666 n.2 (D.C. Cir. 2013); *see also* D.C. Cir. R. 32.1(b)(1)(B). In any event, the court finds *Karimova* persuasive: The fact that the State Department might "re-open and re-adjudicate" a refused application based on new developments does not change the fact that the Department has already refused the application, thus satisfying its obligation to act. *See Karimova*, 2024 WL 3517852, at *2, *4–5.

IV. CONCLUSION

By refusing Azaragoshasbi a visa, the State Department fulfilled its duty. Although Plaintiffs are understandably disappointed by that outcome, they have failed to identify any further action the State Department is required to take. Plaintiffs therefore cannot state a claim under either the APA or the Mandamus Act. Accordingly, the court will GRANT Defendants' Motion to Dismiss. A corresponding order will follow.

Date: August 26, 2025

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge